Filed 5/23/22  In re Y.T. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Y.T., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.T.,<br><br>    Defendant and Appellant. | F083370<br><br>(Super. Ct. No. JD140313-00)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Therese M. Foley, Judge.

Elizabeth C. Alexander, under appointment by the Court of Appeal, Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellant M.T. (mother) is the mother of six-year-old Y.T., the subject of this dependency matter. Mother seeks reversal of the juvenile court's orders issued at a selection and implementation hearing that resulted in mother's parental rights being terminated. Mother contends the juvenile court's appointment of a guardian ad litem for her at the 12-month review hearing was made in error, and therefore all subsequent orders, beginning with the orders terminating her reunification services, should be reversed. Mother contends this appointment violated her rights to due process because she was denied the ability to work directly with her attorney. We affirm.

## FACTS

### Initial Removal

On October 14, 2019, Kern County Sheriff's Deputy N. Sanchez responded to a disturbance call and contacted mother, then three-year-old Y.T., and an acquaintance of mother, P.V. P.V. was giving mother a ride to a job interview before he and mother became involved in an altercation where bottles were thrown. The deputy found mother to be highly agitated and uncooperative. He further observed mother demonstrating signs consistent with being under the influence of a controlled substance.

Deputy Sanchez became concerned when mother tightened her grip on Y.T.'s arm. Mother was placed under arrest based upon her level of intoxication. Mother claimed she drank only one beer on the date of her arrest, and denied throwing a beer bottle at P.V. Mother admitted to methamphetamine use two days prior to her arrest. Y.T. was found to be dirty, inappropriately clothed for the weather, and it was later discovered that Y.T.'s hair was infested with lice.

Y.T. was placed into protective custody by Deputy Sanchez, and the following day a social worker from the Kern County Department of Human Services (department) received the case for further investigation. Mother denied using drugs on the date of her arrest, and would not provide a clear answer regarding her past drug usage. Y.T.'s alleged father, Sergio M., resided in Mexico, and mother had no address for him.

2.

The department filed an original petition alleging Y.T. was described by Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1] The petition alleged Y.T. was at risk of suffering serious physical harm due to mother's substance abuse and past neglect of Y.T.'s siblings. Five of Y.T.'s siblings had previously been adjudged dependents of the juvenile court. A maternal aunt was appointed legal guardian of three siblings in 2007, and the other two siblings were adopted in 2017 after mother failed to reunify.

At the detention hearing held on October 17, 2019, mother was present with assistance from a Spanish-language interpreter and her court appointed counsel. The juvenile court ordered Y.T. detained from mother, and set a combined jurisdiction and disposition hearing for December 2, 2019.

***Jurisdiction and Disposition***

The department prepared a report for the jurisdiction hearing and recommended the allegations of the original petition be found true. Y.T. remained placed in foster care, and father's whereabouts remained unknown. Mother declined to submit to drug testing. At the combined jurisdiction and disposition hearing, mother was not present, however, she had gone over a waiver of rights form with her attorney that was submitted to the court. The juvenile court found the allegations of the petition true and continued the disposition portion of the hearing to January 21, 2020.

The department's report on disposition recommended that reunification services be provided to mother. Mother's case plan consisted of counseling for parenting, child neglect, and substance abuse. Supervised visitation was arranged between mother and Y.T. with mother missing some visits due to miscommunication. Mother enrolled in counseling for parenting and neglect in October 2019, and substance abuse counseling in

---

**1** All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

3.

November 2019. A progress report from mother's substance abuse counseling program indicated that she tested positive for methamphetamine on January 10, 2020. The department intended to place Y.T. with the adoptive parent of two of her siblings.

At the disposition hearing held on February 25, 2020, mother was present and submitted on the department's recommendations without contest. The juvenile court adjudged Y.T. a dependent and ordered mother reunification services.

*Family Reunification Period*

The department prepared a report for the six-month review hearing to be held on August 25, 2020, recommending continued family reunification services for mother. As of the filing of the report, mother had completed counseling for parenting and neglect. However, she failed to provide verification of her enrollment in substance abuse counseling, and refused to submit to drug testing. Mother told the social worker that she did not understand why she needed to complete substance abuse counseling because she was not a " 'drug addict,' " and she believed the department had "wrongly [taken] away her child."

Supervised visitation was conducted through electronic video conferencing due to the COVID-19 pandemic, and visits were suspended while mother was incarcerated from April 25, 2020 to July 20, 2020. Y.T's therapist determined she was no longer in need of therapy, and was described as happy in the home of her siblings' adoptive parent. Mother did not appear at the six-month review hearing, and her counsel submitted the matter without contest. The juvenile court adopted the department's recommendations and continued mother's reunification services.

The department's report prepared for the 12-month review hearing recommended that mother's reunification services be terminated and a section 366.26 hearing be set. During the reporting period, mother had maintained minimal communication with the social worker, and failed to provide documentation that she was enrolled in substance abuse counseling. Mother refused to comply with her drug testing requirement, and had

4.

been arrested for assault with a deadly weapon in April 2020. Y.T. remained placed with her siblings, and the siblings' adoptive parent was committed to a plan of adoption should reunification fail.

At the 12-month review hearing on November 17, 2020, mother appeared through the assistance of a Spanish-language interpreter. Mother's counsel requested the matter be set for contested hearing. Her counsel also indicated that he wanted to speak with mother through the interpreter after the hearing to verify her correct phone number because he had been unable to reach her.

In a supplemental report, the social worker noted mother's documented attendance of seven of 15 scheduled sessions of substance abuse counseling as of January 2021. Mother submitted to two separate drug tests in December of 2020, which resulted in one positive result for methamphetamine. The quality of a December 22, 2020 visit was noted as poor due to mother's lack of interaction with Y.T. Mother also failed to appear for four recent visits.

At the continued 12-month review hearing on December 14, 2020, mother was present and assisted by a Spanish-language interpreter. Mother's counsel explained that he was still unable to reach mother despite multiple attempts through phone and letter. Counsel became concerned that mother either did not understand the "gravamen" of the situation or did not care. Mother interrupted, "I do understand. The thing is that I didn't hear." Mother's counsel then requested the court to appoint a guardian ad litem for mother because of his inability to communicate with her.

The juvenile court informed mother that it could appoint a guardian ad litem to assist counsel in being able to communicate with her. Mother initially responded "[t]hat's fine." It was further explained by the juvenile court how a guardian ad litem would protect her rights in the proceedings, serve as her representative, and control the litigation of the case without waiving fundamental rights unless there was a significant benefit to her. The juvenile court asked mother if she understood what this meant, and

she responded in the affirmative. Mother acknowledged that she was requesting the juvenile court appoint a guardian ad litem to assist her in the dependency matter.

Mother was provided with the telephone numbers of her counsel and guardian ad litem, and the juvenile court stressed the need for her to communicate with them before a new hearing on the contested 12-month review. Mother acknowledged her need to contact counsel and guardian ad litem before the next hearing, and indicated she would call her counsel as soon as possible.

The contested 12-month review hearing was held on January 28, 2021, and mother failed to appear for the hearing. Both mother's counsel and her guardian ad litem claimed to have ongoing issues with their inability to communicate with mother. Mother's counsel objected to the department's recommendation and argued that reunification services should be continued. The juvenile court terminated mother's reunification services and set a section 366.26 hearing for May 25, 2021.

### Section 366.26 Hearing

A section 388 petition was filed by mother's guardian ad litem requesting either family maintenance or reunification services, which was set for a hearing on the same date as the pending section 366.26 hearing. The section 366.26 report recommended that the juvenile court terminate mother's parental rights and order a permanent plan of adoption for Y.T. Y.T. remained placed with her siblings' adoptive parent who expressed his unwavering commitment to adopt Y.T. Y.T. appeared secure in the presence of her prospective adoptive parent, and enjoyed a nurturing and loving relationship with him.

Mother only participated in 12 visits with the child out of 134 opportunities to visit since Y.T.'s removal 18 months prior. Notes from visitations indicated mother was attentive to Y.T. and interacted appropriately. Y.T. recently told the adoptions social worker that she did not want to visit with her mother, and she previously hid under the bed when learning mother wanted to speak to her on the phone.

6.

The section 366.26 hearing held on May 25, 2021, was continued to complete publication of notice for the child's alleged father. Mother was provided with proper notice for the hearing, however, she failed to appear. The section 388 hearing was also continued despite requests from counsel for the department and Y.T. to proceed with a decision on the petition. The department filed a supplemental report in response to the section 388 petition, which recommended that the petition be denied.

A continued and combined hearing pursuant to sections 366.26 and 388 was held on August 13, 2021. Mother failed to appear again, but her guardian ad litem was present. Mother's counsel argued that the section 388 petition should be granted, but the juvenile court found that mother had failed to meet her burden of proof on the petition. As to the section 366.26 hearing, mother's counsel objected to the department's recommendation, and he had no additional evidence or authority to present. Mother's guardian ad litem had communicated with mother's counsel prior to the hearing to inform counsel of the guardian ad litem's position for mother. The juvenile court found Y.T. was likely to be adopted, and terminated the parental rights of mother and the alleged father.

## DISCUSSION

Mother contends the juvenile court erred in appointing a guardian ad litem because although she consented to the appointment, her consent was not informed, and there was insufficient evidence supporting the appointment of a guardian ad litem. The department contends that any error in appointing a guardian ad litem for mother was harmless. Mother argues the appointment of a guardian ad litem resulted in prejudicial error because she was denied the right to directly communicate with her counsel and never returned to court after the appointment.

## I.     Applicable Legal Principles

"[T]he primary concern in section 300 cases is whether the parent understands the proceedings and can assist the attorney in protecting the parent's interests in the

7.

companionship, custody, control and maintenance of the child." (*In re Sara D.* (2001) 87 Cal.App.4th 661, 667, fn. omitted.) If the juvenile court has reason to believe that the parent is mentally incompetent, the court has the inherent power to appoint a guardian ad litem. (*Ibid.*; *Mabry v. Scott* (1942) 51 Cal.App.2d 245, 256.)

The appointment of a guardian ad litem transfers control over the litigation from the parent to the guardian. (*In re James F.* (2008) 42 Cal.4th 901, 910-911.) "The guardian ad litem has broad powers: 'the power to control the lawsuit, including controlling procedural steps necessary to the conduct of the litigation … and controlling trial tactics.' [Citation.] Because 'the decisions made can affect the outcome of the dependency proceeding, with a corresponding effect on the parent … the parent has a direct and substantial interest in whether a guardian ad litem is appointed.' " (*In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1187.)

"Before appointing a guardian ad litem for a parent in a dependency proceeding, the juvenile court must hold an informal hearing at which the parent has an opportunity to be heard. [Citation.] The court or counsel should explain to the parent the purpose of the guardian ad litem and the grounds for believing that the parent is mentally incompetent. [Citation.] If the parent consents to the appointment, the parent's due process rights are satisfied. [Citation.] A parent who does not consent must be given an opportunity to persuade the court that appointment of a guardian ad litem is not required, and the juvenile court should make an inquiry sufficient to satisfy itself that the parent is, or is not, competent. [Citation.] If the court appoints a guardian ad litem without the parent's consent, the record must contain substantial evidence of the parent's incompetence." (*In re James F.*, *supra*, 42 Cal.4th at pp. 910-911.) "[E]rror in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding is trial error that is amenable to harmless error analysis rather than a structural defect requiring reversal of the juvenile court's orders without regard to prejudice." (*Id.* at p. 915.)

## II.     Analysis

First, mother maintains she did not forfeit the guardian ad litem issue by failing to object or seek review of the orders from the 12-month review hearing.  We question whether the January 28, 2021 appointment order is properly subject to review from the September 30, 2021 notice of appeal, which does not mention the guardian ad litem appointment order.  (See *In re Janee J.* (1999) 74 Cal.App.4th 198 [mother could not challenge orders that predated the termination order or assert claims of due process violations at previous hearings because she had failed to timely and appropriately raise those claims by appeal or writ].)  The department does not address the issue of forfeiture. Even were we to assume the issue has not been forfeited, we conclude mother's challenge to the juvenile court's orders nevertheless fails on the merits.

In the present case, mother expressly consented to the appointment of the guardian ad litem.  Therefore, the juvenile court conducted no further inquiry on the record on the question of mother's competence and none was needed because the mother's consent satisfied due process.  (*In re Sara D.*, *supra*, 87 Cal.App.4th at p. 668.)  Although mother complains that the juvenile court did not adequately explain the consequences of a guardian ad litem appointment, we find that the juvenile court provided an adequate explanation of the role that mother's guardian ad litem would take in the proceedings. Specifically, the juvenile court described how her guardian ad litem would protect her rights in the proceedings, serve as her representative, and control the litigation of the case.

Mother's claim that her consent was uninformed by an inadequate explanation is contradicted by the fact that she gave her express affirmation that she understood the juvenile court's statement regarding the function of a guardian ad litem.

In any case, mother suffered no prejudice from the appointment of a guardian ad litem.  A violation of due process requires reversal only if we cannot say that the error was harmless beyond a reasonable doubt.  (*In re Jessica G*., *supra*, 93 Cal.App.4th at p.

9.

1189; *In re Sara D.*, *supra*, 87 Cal.App.4th at p. 673.) We do not determine whether the error was harmless by considering whether the juvenile court would have, nonetheless, found appointment of a guardian ad litem necessary had it followed the proper procedure. Instead, we determine whether the error was harmless by considering whether the appointment of a guardian ad litem for mother in this case affected the outcome of the proceedings. (*In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 93.)

In the case of *In re Sara D.*, the mother's attorney stated that he had three more witnesses to present. A guardian ad litem was then appointed, and approximately a month later, without further testimony, the guardian ad litem agreed to submit to jurisdiction. Under those circumstances, we concluded that we could not "speculate as to the substance or effect the testimony [of the uncalled witnesses] would have had on the court's decision." (*In re Sara D.*, *supra*, 87 Cal.App.4th at p. 673.)

Mother suggests that she was prejudiced by the appointment of the guardian ad litem because she "lost her voice in the proceedings" and was denied the right to directly communicate with her counsel. However, mother's inability to speak in the proceedings and communicate with her counsel was more and directly attributable to her choice to not attend the proceedings after receiving proper notice. The appointment of mother's guardian ad litem had no effect on the termination of mother's reunification services where she failed to appear at the contested hearing or provide any meaningful information to her guardian ad litem or counsel. Given mother's lack of effort to resolve her substance abuse problem during the 12-month review period and failure to appear at the contested 12-month review hearing, mother's counsel was unable to present any relevant evidence that would have allowed for the juvenile court to extend reunification services.

Similarly, the outcome of mother's section 388 petition and the section 366.26 hearing would have been the same with or without the appointment of a guardian ad litem. The fact that mother's guardian ad litem filed the section 388 petition with

10.

supporting documentation tends to show that the appointment resulted in benefit to mother rather than harm. In fact, due to mother's failure to appear at multiple hearings, the guardian ad litem was the one person who was actually able to provide her with a voice and provide her counsel with a position at the sections 388 and 366.26 hearings. The guardian ad litem did not waive any of mother's rights and there is no evidence that they took any action that either contravened mother's interests or was contrary to her wishes. It also cannot be said that mother was prevented from testifying or otherwise assisting her counsel in directing the litigation because she failed to appear at any of the hearings on the section 388 petition and selection and implementation of a permanent plan.

At the section 366.26 hearing, the only substantive issue that mother could have possibly provided input was whether termination of parental rights would be detrimental to Y.T. (§ 366.26, subd. (c)(1).) Mother does not claim she had either witnesses who were not presented or facts to support an exception to termination of parental rights. Given that mother failed to maintain regular visitation with Y.T. throughout the almost two years of dependency proceedings, there was no likelihood that mother would have been able to show that the continuation of the parent-child relationship promoted the well-being of Y.T. to such a degree as to outweigh the well-being she would gain in a permanent home with her stable, loving and committed caregiver. (*In re Amber M.* (2002) 103 Cal.App.4th 681, 689; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Finally, unlike the situation encountered in *In re Sara D.*, *supra*, 87 Cal.App.4th at page 673, there is simply nothing in the record to suggest the appointment of a guardian ad litem for mother affected even the manner in which the case proceeded. There is nothing in the record to suggest that mother "was unable to express [her] wishes to the court, either directly or through [her] appointed guardian, that [she] lacked actual notice of the proceedings as they unfolded, that the guardian and the attorney appointed for [her] failed to properly advocate for [her] parental interests, or that [mother] ever expressed

11.

dissatisfaction with the guardian ad litem or asked the juvenile court to vacate her appointment." (*In re James F*., *supra*, 42 Cal.4th at p. 917.) Therefore, there is no reasonable doubt the outcome would not have been any different without the appointment of the guardian ad litem. Any error in the appointment, which we find none, was harmless. (*Id*. at pp. 915, 918-919.)

## **DISPOSITION**

The juvenile court's orders are affirmed.

SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


DE SANTOS, J.